Margaret McKINLEY, Plaintiff-Appellant,

v.

Bruce KAPLAN, in his official capacity, Miami-Dade County, a political subdivision of the State of Florida, Defendants-Appellees.

No. 98-4947.

United States Court of Appeals,

Eleventh Circuit.

June 14, 1999.

Appeal from the United States District Court for the Southern District of Florida. (No. 97-3291-CIV-JLK), James L. King, Judge.

Before EDMONDSON and MARCUS, Circuit Judges, and ALARCON[*], Senior Circuit Judge.

PER CURIAM:

This is a First Amendment retaliation claim brought by Margaret McKinley against Miami-Dade County ("County") and former County Commissioner Bruce Kaplan for the county's removal of McKinley from the Miami-Dade County Film, Print and Broadcast Advisory Board ("Film Board"). The Film Board was created by the County for the purpose of advising it on policy issues concerning the entertainment industry in the area. McKinley was originally appointed to the Film Board by Commissioner Kaplan. In the fall of 1997, heated political debate arose in the Miami area regarding the County's policy of suspending persons or entities who do business with Cuba from using the County's public facilities. On September 23, 1997, the *Miami Herald* reported McKinley as criticizing existing policy by saying, "While we respect and appreciate the concerns of Cuban Americans in the exile community, allowing a few people's political standpoint to dictate the potential economic growth of the area is not for the benefit of the community as a whole." That same day, Commissioner Kaplan wrote McKinley to inform her that he was removing her as his appointee to the Film Board because of these comments, which he viewed as "inappropriate and

[*]Honorable Arthur L. Alarcón, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

insulting." McKinley was then formally removed from her position on the Film Board by a vote of the Board of County Commissioners.

On October 14, 1997, McKinley brought this action under 42 U.S.C. § 1983, alleging that her removal from the Film Board violated her First Amendment right to free speech, as incorporated against the states by the Fourteenth Amendment. McKinley's complaint sought only injunctive and declaratory relief—in effect, reinstatement to the Film Board—as a remedy. However, while this action was pending in the district court, on April 15, 1998, Commissioner Kaplan resigned from the Board of County Commissioners.[1] Under the ordinances of Miami-Dade County, "when the Commissioner who appointed a board member leaves office, the terms of his or her appointees to County boards shall expire." Dade County Code § 2-11.38.2(c). The parties agree that by operation of this section, McKinley's entitlement to her seat on the Film Board expired and she ceased to have any right to reinstatement on the date Kaplan resigned.

The cessation of McKinley's term of appointment created a mootness problem with the instant litigation because she could no longer be reinstated and reinstatement was the only type of relief sought. This mootness problem generated additional pleadings from both sides the following week. The County moved to dismiss for lack of subject matter jurisdiction, while McKinley filed a motion to amend her complaint to add a claim for money damages under § 1983.[2] *See Adler v. Duval Cty. Sch. Bd.,* 112 F.3d 1475, 1478 (11th Cir.1997) (noting that while high school students' Establishment Clause claims against school officials regarding policy allowing prayer at graduation ceremony were mooted by students' graduation, "[b]ecause the [students'] claim for money damages does not depend on any threat future harm, this claim remains a live controversy"). The district court denied leave to amend, and dismissed McKinley's lawsuit with prejudice.

[1]Mr. Kaplan resigned from his position as a county commissioner as part of a plea bargain agreement regarding certain criminal charges brought against him by the State Attorney in Miami-Dade County.

[2]Without expressing any view as to the merits, for purposes of resolving the mootness and procedural questions presented here we can assume *arguendo* that if she was removed from the Film Board in retaliation for the exercise of her First Amendment rights, McKinley could be entitled to damages under 42 U.S.C. § 1983 for the interval between September 23, 1997 and April 15, 1998 when she would otherwise have been entitled to her seat. *See Carey v. Piphus,* 435 U.S. 247, 258-59, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

On appeal, McKinley contends that (i) the district court erred in denying the motion to amend the complaint, and (ii) if dismissal was proper, it should have been without prejudice.

We review the district court's denial of leave to amend the complaint for abuse of discretion. *See Technical Resource Servs. Inc. v. Dornier Med. Sys., Inc.,* 134 F.3d 1458, 1463 (11th Cir.1998). After a responsive pleading has been served, a plaintiff may amend a complaint by leave of court, and "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The district court based its denial of leave to amend on three grounds. First, it cited *Arizonans for Official English v. Arizona,* 520 U.S. 43, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997), and several other lower court cases, in support of the proposition that McKinley's amendment was improper because it was "for the sole purpose of avoiding dismissal for mootness." District Court Order Dismissing Case, at 5. In *Arizonans for Official English,* a state employee brought a § 1983 action against the state and state officials alleging that their "English as an official language" policy violated her First Amendment rights. During the pendency of the litigation, however, the employee-plaintiff resigned from public sector employment to pursue work in the private sector. In order to avoid mootness, the plaintiff, without actually moving to amend, suggested that she might seek nominal damages a form of relief against which the mootness bar would not apply. The Ninth Circuit accepted plaintiff's argument and allowed the litigation to proceed. On appeal, the Supreme Court rejected the same reason, holding that "[a]t that stage of the litigation ... [plaintiff's] plea for nominal damages was not the possibility the Ninth Circuit imagined." 520 U.S. at 67, 117 S.Ct. at 1069. Plaintiff could not possibly recover nominal damages because her cause of action was under § 1983, the only defendants were state officials in their official capacity (which the Ninth Circuit construed as tantamount to suing the state itself), and a § 1983 action cannot lie against a state. *See id.* (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). In other words, the reason the plaintiff's attempted addition of a damages claim could not obviate the mootness problem in *Arizonans for Official English* was that such a damages claim would, as a matter of law, be non-meritorious and futile. In the instant case, pursuant to

well-established precedent, the county is a proper defendant in a § 1983 action and can be liable for money damages. *See Owen v. City of Independence,* 445 U.S. 622, 633, 650, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

The same rationale distinguishing *Arizonans for Official English* also makes *Fox v. Board of Trustees of SUNY,* 42 F.3d 135 (2d Cir.1994), *cert. denied,* 515 U.S. 1169, 115 S.Ct. 2634, 132 L.Ed.2d 873 (1995), inapplicable. There, students challenged a state university regulation on First Amendment grounds, seeking solely injunctive relief. After the litigation commenced but while it was pending, the plaintiffs completed their undergraduate studies and none remained enrolled. The district court therefore concluded that their claims were moot and dismissed. *See id.* at 139. Attempting to revive the lawsuit, the plaintiffs unsuccessfully argued alternately that (i) a claim for nominal money damages could be inferred from their complaint, and (ii) they should be allowed to amend their complaint to add a count for money damages. The Second Circuit held that a money damages claim would have been substantively without merit because the state enjoyed Eleventh Amendment immunity, and the individual defendants would be protected by qualified immunity. *See id.* at 141 (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Again, in the instant case, there is no such futility because no such substantive obstacle to the merits of McKinley's damages claim is apparent.

The other cases cited by the district court for the proposition that McKinley's attempted amendment was a ploy to circumvent mootness are not dispositive. In *Tucker v. Phyfer,* 819 F.2d 1030 (11th Cir.1987), a juvenile incarcerated in an Alabama county jail sought damages, injunctive, and declaratory relief for alleged unconstitutional conditions that he and other juveniles were made to suffer at the jail. During the pendency of the lawsuit, he was released from the jail and attained the age of majority, both of which events made his complaint moot insofar as it sought injunctive and declaratory relief. The plaintiff moved for class action certification in an apparent attempt to keep the lawsuit alive, but the district court denied certification, noting that at the time he moved for certification his own claim for injunctive and declaratory relief was moot and therefore he could not prosecute that claim on behalf of those juveniles currently incarcerated. This Court

affirmed, but its reasoning was based on the principle that "[i]n a class action, the claim of the named plaintiff, who seeks to represent the class, must be live both at the time he brings suit and when the district court determines whether to certify the putative class." *Id.* at 1033 (citing *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 404, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)). Based as it was on principles unique to the intersection of class action certification and the mootness doctrine, *Tucker* is inapplicable to the instant case. *Tucker* means merely that McKinley, following the April 15, 1998 expiration of her term on the Film Board, would not have been entitled to seek class certification of her First Amendment retaliatory discharge action.

The case of *Danzy v. Johnson,* 417 F.Supp. 426 (E.D.Pa.1976), *aff'd mem.,* 582 F.2d 1273 (3d Cir.1978) (Table), is more on point than *Tucker,* but it is not binding on this Court, and at any rate, its facts are distinguishable. In *Danzy,* a state prison inmate sued under § 1983 for a declaratory judgment that a certain interstate transfer agreement was unconstitutional. This claim was moot, however, because "[n]o suggestion [was] made that plaintiff is in danger of being subjected to future out-of-state transfers in violation of his constitutionally mandated rights." *Id.* at 432. Two years after the initial complaint was filed and over one year after the complaint was first amended, the plaintiff moved to amend the complaint again, this time to add a request for damages of $250.00 (lost wages during the time he was transferred out of state). *Id.* at 430. The court characterized this motion as "nothing more than an afterthought to avoid dismissal for mootness," *id.* at 430, and held that the plaintiff waived any damage claims.

The court's holding in *Danzy* was simply an application of Rule 15(a) of the Federal Rules of Civil procedure, and there were several salient factors there that differ from the instant case. The damages claim presented "an entirely new and questionable aspect to the suit." *Id.* at 431. Under the initial complaint which sought only declaratory relief, all of the contested issues were purely legal and could have been resolved without any trial or taking of evidence. The delay in seeking amendment—two years—was of a much greater duration. Even more importantly, in *Danzy,* the reason why the plaintiff's claim was moot (that there was no likelihood he would be transferred again) existed continuously throughout the litigation. Here, by contrast,

mootness arose suddenly and unexpectedly when Commissioner Kaplan resigned. McKinley acted promptly thereafter to add a damages claim.

The district court's second rationale for denying leave to amend in this matter was that the parties' joint scheduling report and proposed scheduling order had established an amendment deadline of February 15, 1998. However, the alleged joint scheduling order apparently never was entered and therefore never became binding as necessary to trigger the operation of Rule 16(b) of the Federal Rules of Civil Procedure. The County has cited no authority for the proposition that a proposed, but not entered, joint scheduling order is binding for purposes of Rule 16(b), and this Court's independent research has disclosed no such authority. In the absence of a dispositive scheduling order, whether leave to amend should be granted is governed by the more liberal standard set forth in Rule 15(a).

Third, the district court noted that "it is unlikely that Plaintiff's Amended Complaint could survive dismissal pursuant to Rules 12(b)(6) and 9 of the Federal Rules of Civil Procedure." District Court Order Dismissing Case, at 6. On the contrary, Rule 9(b) which imposes heightened requirements of particularity on complaints in certain types of case, has no application to civil rights actions under 42 U.S.C. § 1983. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). In order to state a cause of action under § 1983, the plaintiff must allege only two things: (1) some person has deprived him or her of a federal right; and (2) that he or she acted under color of state law. *See Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). McKinley pleaded that the County violated her First and Fourteenth Amendment rights, Amended complaint ¶ 13, and that it acted under color of state law, Amended Complaint ¶ 3. Thus, the amended complaint was not susceptible to dismissal under Rule 12(b)(6) and the district court's use of this ground to support denial of leave to amend was unwarranted.[3]

---

[3]The County argues that the district court's denial of leave to amend was also supported by McKinley's assertion in her January 5, 1998 deposition that she was seeking only injunctive and declaratory relief. We have reviewed the deposition transcript and we do not agree. McKinley phrased her statement that she was seeking only injunctive and declaratory relief in tentative language. More importantly, at the time of this deposition, she evidently felt that reinstatement to the Film Board would make her whole; she was entitled to seek a different form of relief once reinstatement was no longer possible.

Under Rule 15(a), leave to amend shall be "freely given when justice so requires." Fed.R.Civ.P. 15(a). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' " *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). None of the examples given in the *Foman* opinion justify the denial of leave to amend in this case. The silent premise of the district court's opinion seems to be that McKinley's claim for damages was disingenuous in light of the fact that it was filed only after her existing claims were mooted. On the contrary, however, we see nothing illegitimate about a plaintiff seeking a new type of relief when intervening events occur during the pendency of litigation that makes the originally sought relief impossible. The circumstances making injunctive relief moot arose suddenly and unexpectedly when Commissioner Kaplan resigned as part of a plea bargain in a criminal cause. They are not attributable to any negligence or fault on the part of McKinley.

Also important to our decision is the absence of any significant prejudice to the County. *See Loggerhead Turtle v. Council of Volusia Cty.,* 148 F.3d 1231, 1257 (11th Cir.1998) (noting that "[a]ny amendment to an original pleading necessarily involves *some* additional expense to the opposing party," but adding that this will not justify denial of leave where the additional expense is "of nominal proportions" (emphasis added)). McKinley's amended complaint did not allege any new facts or grounds for relief, and did not necessitate additional discovery or reformulation of the County's legal strategy. Substituting money damages for injunctive and declaratory relief would not alter one bit the underlying legal analysis of whether McKinley's First and Fourteenth Amendment rights were violated. Therefore, permitting an amendment would not have caused any undue hardship to the County. In sum, the district court abused its discretion by not allowing McKinley to amend her complaint to seek damages after Commissioner Kaplan resigned thereby

Furthermore, the County argues no legal theory whereby McKinley's deposition statement can foreclose her right to amend her complaint under Fed.R.Civ.P. 15(c). Perhaps the County could rely on the doctrine of estoppel, but it has not shown that it detrimentally relied on McKinley's statement nor that granting leave to amend would cause it any prejudice.

rendering her claim for reinstatement moot.  Because we so hold, it is unnecessary for us to consider the second question, i.e., whether the subsequent dismissal of McKinley's complaint should have been without prejudice.

VACATED AND REMANDED.