819 F.2d 1030
 8 Fed.R.Serv.3d 24
 Larry TUCKER, on behalf of himself and all others similarly
situated, Plaintiff-Appellant,
Melvin P., a minor, by his Next Friend, Sandra Powell,
Applicant for Intervention-Appellant,
v.
George PHYFER, who is sued individually and as Director for
the Alabama Department of Youth Services; Charles Fred
Collisson, individually and as Region I Coordinator, for the
Alabama Department of Youth Services; Lauderdale County,
Alabama; J.R. Austin, James H. Hamilton, Selton Killen,
Larry J. Hayes, individually and as Commissioners of
Lauderdale County, Alabama; Billy Townsend, individually
and as Sheriff of Lauderdale County, Alabama; Deborah Bell
Paseur, Judge of the Juvenile Court of Lauderdale County,
Alabama; Harry Williams, individually and as Chief
Probation Officer of Lauderdale County, Alabama, Defendants-Appellees.
 No. 85-7653.
 United States Court of Appeals,
Eleventh Circuit.
 June 22, 1987.
 
 James R. Bell, Youth Law Center, Carole B. Shauffer, Loren M. Warboys, San Francisco, Cal., John R. Benn, Robert W. Bunch, Florence, Ala., Mark I. Soler, Youth Law Center, San Francisco, Cal., for plaintiff-appellant.
 Marvin A. Wilson, Florence, Ala., for Billy Townsend.
 J.R. Brooks, Huntsville, Ala., for Lauderdale County, Ala., J.R. Austin, William Duncan, James H. Hamilton, Larry J. Hayes & Selton Killen.
 Thomas R. Christian, Montgomery, Ala., William J. Samford, II, Mt. Meigs, Ala., Robert T.J. Childers, Montgomery, Ala., for George Phyfer, Charles F. Collisson, Deborah Bell Paseur & Harry Williams.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before TJOFLAT and HATCHETT, Circuit Judges, and EATON*, Senior District Judge.
 TJOFLAT, Circuit Judge:
 
 I.
 
 1
 Appellant, Larry Tucker, was sixteen years old when his mother and Next Friend, Ruby Tucker, filed this case on his behalf on September 25, 1981. Tucker was incarcerated in the Lauderdale County jail in Florence, Alabama, and he claimed that the defendants, the Lauderdale County sheriff and other officials responsible for the operation of the jail, were confining him and other juveniles in the jail under dangerous, inadequate, and unlawful conditions in violation of the eighth and fourteenth amendments.[1] Tucker sought money damages for himself and declaratory and injunctive relief on behalf of himself and a class of people consisting of "all juveniles who are currently, have been during the year prior to the filing of Plaintiffs' original Complaint, and in the future will be confined in the Lauderdale ... County Jai[l]."
 
 
 2
 On August 11, 1983, nearly two years after bringing suit, Tucker moved the district court to certify his case as a class action pursuant to Rule 23(a)-(b)(2) of the Federal Rules of Civil Procedure.[2] Tucker requested that the class consist of "all juveniles who have been detained, incarcerated, or placed in the Lauderdale County adult or juvenile jail facilities since September 25, 1980" and asked that the court name him as the representative of the class. By the time Tucker requested class certification he was eighteen years old, had been released from the Lauderdale County jail, and was no longer subject to incarceration as a juvenile.
 
 
 3
 On August 28, 1984, a magistrate recommended that the district court deny Tucker's motion for class certification. The magistrate found that because Tucker lacked juvenile status when he moved for class certification, his claim for declaratory and injunctive relief was moot, thereby rendering him ineligible to prosecute that claim on behalf of those then incarcerated in the jail. The magistrate found alternatively that Tucker could not adequately and fairly represent the class because (1) in the event the defendants offered to settle the case, Tucker, having only a claim for damages, might have a conflict of interest with those seeking declaratory and injunctive relief; (2) Tucker's testimony indicated that he was unaware of his responsibilities as class representative, was unfamiliar with his attorneys, and had little interest in the lawsuit; and (3) Tucker's counsel had demonstrated several shortcomings, leading the magistrate to question their ability to prosecute the case on behalf of the class members.
 
 
 4
 Tucker filed a timely objection to the magistrate's report, and the district court heard arguments on September 28, 1984. While the court had the matter under advisement, Tucker's attorneys moved the court on behalf of appellant Melvin P. to allow Melvin P., through his Next Friend, Sandra Powell Redding, to intervene as a party-plaintiff and class representative. Melvin P. was at that time a fourteen-year-old juvenile incarcerated in the Lauderdale County jail under the same allegedly unconstitutional conditions described in Tucker's complaint.
 
 
 5
 On January 11, 1985, at a pretrial conference, the district court heard argument on Melvin P.'s motion to intervene and further argument on Tucker's motion for class certification. At the conclusion of the conference, the court orally announced that it would deny both motions, dismiss Tucker's claim for prospective equitable relief on the ground of mootness, and retain jurisdiction of Tucker's damages claim for further proceedings. On April 8, 1985, the court memorialized these rulings in a written order. Tucker and Melvin P. then moved the court to certify the rulings for interlocutory appeal. The court granted their motion, and we accepted jurisdiction. See 28 U.S.C. Sec. 1292(b) (1982 & Supp. III 1985). We affirm the district court as to each of its challenged rulings.
 
 II.
 A.
 
 6
 It is well settled that at the time a plaintiff brings suit he must have standing to prosecute his claim; he must have a "personal stake" in the outcome of the litigation. See, e.g., City of Los Angeles v. Lyons, 461 U.S. 95, 101, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983); United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396-97, 100 S.Ct. 1202, 1208-09, 63 L.Ed.2d 479 (1980). The mootness doctrine requires that the plaintiff's controversy remain live throughout the litigation; once the controversy ceases to exist, the court must dismiss the cause for want of jurisdiction. See, e.g., Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937); Church of Scientology Flag Serv. Org. v. City of Clearwater, 777 F.2d 598, 604 (11th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1973, 90 L.Ed.2d 656 (1986). In a class action, the claim of the named plaintiff, who seeks to represent the class, must be live both at the time he brings suit and when the district court determines whether to certify the putative class. If the plaintiff's claim is not live, the court lacks a justiciable controversy and must dismiss the claim as moot. See Geraghty, 445 U.S. at 404 & n. 11, 100 S.Ct. at 1213 & n. 11.
 
 
 7
 The foregoing principles apply to every claim the plaintiff presents in his complaint. The Supreme Court made this point clear in Lyons. In that case, the plaintiff sued the city of Los Angeles, California, and four of its police officers, claiming that the officers had injured him and infringed his constitutional rights by applying a "chokehold," a technique sanctioned by the city's police department, to subdue him following a traffic stop. The plaintiff sought money damages for the injuries he had sustained and injunctive relief on behalf of himself and others "similarly situated" against the police department's further use of the chokehold. Lyons, 461 U.S. at 98, 103 S.Ct. at 1663. The district court granted the defendants a partial summary judgment, see Fed.R.Civ.P. 54(b), dismissing the plaintiff's claim for injunctive relief on the ground that he lacked standing to seek such relief. The court of appeals reversed. It reasoned that the plaintiff and others might be exposed to chokehold incidents like the one the plaintiff had experienced and, invoking the "capable of repetition, yet evading review" doctrine of Southern Pac. Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), concluded that the plaintiff had standing to pursue his equitable claim. See Lyons v. City of Los Angeles, 615 F.2d 1243, 1249 (9th Cir.1980).
 
 
 8
 The Supreme Court, on certiorari, reversed. The Court held that the mere possibility that the plaintiff might again be exposed to the chokehold did not suffice to give him standing to seek injunctive relief. See Lyons, 461 U.S. at 105-06, 103 S.Ct. at 1667. The Court acknowledged, however, that a live controversy existed with respect to the plaintiff's damages claim; consequently, the district court was free to adjudicate that claim to a conclusion. Id. at 109, 103 S.Ct. at 1669.
 
 
 9
 Lyons stands for the proposition that a plaintiff who has standing to bring a damages claim does not automatically have standing to litigate a claim for injunctive relief arising out of the same set of operative facts. In holding that Lyons had no standing to pursue his claim for injunctive relief, the Court necessarily concluded that the live controversy concerning the injury Lyons had suffered and any money damages that might be due him could not perform "double duty," simultaneously providing Lyons with standing to prosecute both his claim for damages and his claim for injunctive relief. In sum, article III's command that a plaintiff have standing to assert his claim clearly mandates more than that the plaintiff and the defendant have a dispute over something; it means that the plaintiff and the defendant must have a justiciable dispute over the specific claim the plaintiff asserts.
 
 
 10
 Article III requires that a plaintiff's claim be live not just when he first brings suit, but throughout the litigation.[3] See Church of Scientology Flag Serv. Org., 777 F.2d at 604; C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure Sec. 3533 (2d ed. 1984). In Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), and in United States Parole Comm'n v. Geraghty, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), the Supreme Court addressed whether the mooting of the named plaintiff's claim deprives a federal court of its power to adjudicate his class action. In Sosna, the named plaintiff successfully obtained class action certification in her case challenging the constitutionality of Iowa's residency and divorce laws. By the time the case reached the Supreme Court for review, however, the named plaintiff had obtained a divorce, thus rendering her own claim moot. In deciding that a "case or controversy" still existed between the class plaintiffs and the defendants, the Supreme Court stated as follows: "When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by [the named plaintiff]." Sosna, 419 U.S. at 399, 95 S.Ct. at 557 (footnote omitted).[4]
 
 
 11
 Five years after Sosna, the Court considered whether it had the constitutional authority to review a district court's denial of a class certification motion, even though the named plaintiff's claim had become moot following the district court's decision. In Geraghty, the named plaintiff brought suit, on behalf of himself and similarly situated prison inmates, challenging the validity of recently enacted federal parole guidelines. The district court denied his motion to certify the case as a class action, and entered summary judgment for the defendants. Geraghty appealed, but while the court of appeals was considering the case he was released from prison, thus mooting his claim for equitable relief. The court of appeals nevertheless found that it had jurisdiction under article III to review the district court's denial of certification, and the Supreme Court agreed. The Court held that the named plaintiff continued to have a live interest in having the district court rule correctly on his motion to certify a class, and thus could appeal that procedural decision. Geraghty, 445 U.S. at 403-04, 100 S.Ct. at 1212-13. If the district court had erred in denying the motion to certify, then the "corrected ruling [would] 'relat[e] back' to the date of [that] denial." Id. at 404 n. 11, 100 S.Ct. at 1213 n. 11. The Court acknowledged, however, that a corrected ruling could not relate back into a void. That is, if the named plaintiff's claim was already moot when the district court made its erroneous decision, then a corrected ruling could be of no benefit to him: "If the named plaintiff has no personal stake in the outcome at the time class certification is denied, relation back of appellate reversal of that denial still would not prevent mootness of the action." Id.
 
 
 12
 In the case at hand, Tucker's claim for declaratory and injunctive relief was moot at the time he requested the court to certify a class and to name him as class representative.[5] We therefore conclude that the district court was required, under Lyons, to dismiss this claim for lack of standing, Tucker's live claim for money damages notwithstanding.[6] Our view is supported by Geraghty and Sosna, because unlike the named plaintiffs in those cases, Tucker did not move the court to certify his case as a class action until after his equitable claim had become moot. Moreover, Tucker's claim is not "capable of repetition, yet evading review"; indeed, the existence of appellant Melvin P. indicates that other potential plaintiffs exist who would have standing to bring the same claims that Tucker failed to preserve for adjudication. On these facts, we affirm the district court's denial of class certification on the ground that Tucker's claims for declaratory and injunctive relief are moot.[7]B.
 
 
 13
 Having determined that the district court correctly dismissed Tucker's claim for equitable relief without certifying it for class action treatment, we turn to the question whether the district court abused its discretion in denying Melvin P.'s motion for leave to intervene as a party plaintiff.
 
 
 14
 Melvin P. moved the court for leave to intervene so that he could (1) present his claim for money damages for the injuries he had received during his confinement in the Lauderdale County jail and (2) prosecute Tucker's class-wide claim for equitable relief. At the time Melvin P. filed his motion, Tucker's class-wide claim for equitable relief was moot. Consequently, Melvin P. was seeking leave of court to prosecute claims that were not then present in the case, i.e., his claim for damages and his claim for equitable relief. The question for the court was whether to allow Melvin P. to prosecute these claims in Tucker's suit for damages or to require Melvin P. to bring an action of his own. The court chose the latter course and denied Melvin P.'s motion to intervene. In doing so, the court caused Melvin P. no prejudice; he is free to bring his own suit. Under these circumstances, we cannot conclude that the district court abused its discretion when it denied Melvin P. leave to intervene.
 
 
 15
 AFFIRMED.
 
 EATON, Senior District Judge, dissenting:
 
 16
 I dissent. I read McKinnon v. Talladega County, Alabama, 745 F.2d 1360 (11th Cir.1984) the way the majority reads it. However, I do not recognize the impact upon McKinnon that the majority attributes to United States Parole Comm'n v. Geraghty, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) and City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). In my view, McKinnon is the controlling precedent in this case.
 
 
 
 *
 Honorable Joe Eaton, Senior U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 Tucker's original complaint also sought relief against conditions in the Franklin County and the Colbert County jails. The district court dismissed the named defendants from those counties because Tucker, having never been confined in either county's jail, lacked standing to bring claims against them
 
 
 [2]
 Fed.R.Civ.P. 23(a)-(b)(2) states as follows:
 Rule 23. Class Actions
 (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
 (1) the prosecution of separate actions by or against individual members of the class would create a risk of
 (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
 (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole....
 Neither in the district court nor on this appeal has Tucker pressed an argument that he should be permitted to seek money damages on behalf of a class.
 
 
 [3]
 Article III, Sec. 2, cl. 1 of the United States Constitution provides as follows:
 The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;--to all Cases affecting Ambassadors, other public Ministers and Consuls;--to all Cases of admiralty and maritime Jurisdiction;--to Controversies to which the United States shall be a Party;--to Controversies between two or more States;--between a State and Citizens of another State;--between Citizens of different States;--between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.
 The mootness doctrine usually requires a court to dismiss an action in which, because of events occurring after the plaintiff filed the suit, any relief the court might grant would be of no utility to the plaintiff. See C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure Sec. 3533 (2d ed. 1984).
 
 
 [4]
 The Sosna Court also held that because the harm alleged was "capable of repetition, yet evading review," the case could fit into that exception to the mootness doctrine. Sosna, 419 U.S. at 400, 95 S.Ct. at 557-58. The Court has since made it clear that when the named plaintiff's claim becomes moot after certification of a class action the justiciability of his claim does not depend on whether the alleged harm is "capable of repetition, yet evading review." See Franks v. Bowman Transp. Co., 424 U.S. 747, 754, 96 S.Ct. 1251, 1259, 47 L.Ed.2d 444 (1976)
 
 
 [5]
 Tucker contends that the district court erred in ruling that his claim for declaratory relief was moot, because he was seeking a court declaration that his constitutional rights had been violated while he was in the jail as a juvenile. This argument, which would render any past illegal conduct subject to a declaratory judgment, is insupportable because even a favorable ruling would be of no benefit to him. Under 28 U.S.C. Sec. 2201 (1982 & Supp. III 1985), a plaintiff seeking a declaratory judgment must have an "actual controversy" with the defendant. In the present case, because Tucker has reached majority age, he cannot again be subject as a juvenile to the conditions he condemns. Thus, "[a] declaration that [the defendants'] past conduct violated [Tucker's] constitutional rights ... 'would [be] nothing more than a gratuitous comment without any force or effect.' " Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir.1985) (quoting Northern Virginia Women's Medical Center v. Balch, 617 F.2d 1045, 1049 (4th Cir.1980))
 
 
 [6]
 We recognize that unlike the plaintiff in Lyons, who never had standing to assert his equitable claim, Tucker may have had standing initially to seek declaratory and injunctive relief against conditions in the Lauderdale County jail. As we have noted above, however, article III does not distinguish between a plaintiff who lacks standing from the start of his action and one who loses standing during the course of litigation. Mootness is merely " 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' " Geraghty, 445 U.S. at 397, 100 S.Ct. at 1209 (quoting Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973))
 
 
 [7]
 In McKinnon v. Talladega County, 745 F.2d 1360 (11th Cir.1984), a case involving the conditions of confinement in a county jail and having a procedural history similar to that in the instant case, a panel of this court held that the plaintiff had standing to prosecute his claim for equitable relief, even though it had become moot before he requested the district court to certify it for class action treatment. The panel observed that the plaintiff had a live claim for money damages and reasoned that this fact provided "the requisite case-or-controversy ... with respect to the entire action." Id. at 1364 (citation omitted). Because the district court had a case or controversy before it involving at least one of the plaintiff's claims, the court concluded that the plaintiff's lack of standing to seek equitable relief was of no moment. The McKinnon panel decided the case without any reference to the Supreme Court's previous holdings in Lyons and Geraghty. Our prior panel rule, which makes decisions of prior panels of this court binding on subsequent panels of the court, see Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), if applied here, would require us to follow McKinnon 's rationale. We decline to do so, however, for we are convinced that had Lyons and Geraghty been called to the attention of the McKinnon panel, the panel would have come to the conclusion we reach today. In affirming the district court, we do not view ourselves as violating the prior panel rule; rather, we are simply discharging our duty to follow clearly controlling Supreme Court precedent. We hasten to add that had the panel expressly considered Lyons and Geraghty, we would be bound by its interpretation and application of those decisions