George SCHMIDT, Hector Escalera, Janet Fennerty, Maria Castillo, Caprice Neals, Miriam Beckford and Adelina Borges, Plaintiffs,

v.

Robert REICH, Secretary of Labor, Defendant.

No. 93 C 0316.

United States District Court, N.D. Illinois, E.D.

Sept. 27, 1993.

436

Leon M. Despres, Thomas Howard Geoghegan, Robert Chuck Drizin, Despres Schwartz & Geoghegan, Chicago, IL, for plaintiffs.

*MEMORANDUM OPINION*
*AND ORDER*

ASPEN, District Judge:

In this action, five high school students and two school teachers ask this Court to declare that section 3($l$) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203($l$), permits regulation of work hours for sixteen and seventeen year olds, and further seek to enjoin the Secretary of Labor to investigate whether late night and/or excessive work hours can be detrimental to the health and well-being of 16 and 17 year old children and to conduct rulemaking regarding the limitation of work hours for these children. Currently before us are the parties' cross motions for summary judgment. For the following reasons, we grant defendant's motion for summary judgment and deny plaintiffs' motion.

## I. Factual Background

Although the plaintiffs have submitted a 12(m) statement purporting to assay the abusive conditions confronted by sixteen and seventeen year old students holding down afterschool jobs and to detail the deleterious effects of such conditions, the submission encounters two significant obstacles. First, in all but one paragraph, plaintiffs neglect to cite to any record evidence supporting their assertions. Second, with the exception of the section entitled "Plaintiffs' Stories," the factual averments contained in the 12(m) statement are not relevant to this Court's inquiry. We will, then, simply recite, briefly, pertinent background information regarding the plaintiffs.

All five of the student plaintiffs attend Amundsen High School in Chicago. All need to work.[1] Hector Escalera, 18 years old at the time of filing, is a senior at Amundsen who took a job with Venture during his sophomore and junior years. Although the store closed at ten, Escalera often worked until midnight. Unable to get home before 1:00 or 2:00 a.m., Escalera became exhausted and his grades suffered. Escalera has since found a

---

1. Although both the complaint and the 12(m) statement assert that all plaintiffs need to work, only three of the students (Adelina Borges, Hec- tor Escalera, Maria Castillo) have submitted affidavits verifying the information alleged in the complaint.

better job, and his grades have improved. However, he is concerned that his two years of poor grades will prevent him from gaining admission to a good college.

At age 16, Maria Castillo worked from 3:00 p.m. to 11:00 p.m. six days a week. Currently nineteen years old and unable to find a part-time job with reasonable hours, Castillo is unemployed. She asserts that her earlier employment hurt her grades and jeopardized her ability to finish high school.

Caprice Neals was also eighteen at the time this suit was filed and has since turned nineteen. For approximately a year and a half, Neals served as a stock boy at Venture, working fifteen to twenty-three hours per week and frequently getting off after midnight on school nights. Neals is presently employed by J.C. Penney's, but he alleges that his late night hours at Venture damaged his grades.[2]

Prior to January, 1993, Adelina Borges worked at Ace Hardware. Her schedule called for her to put in over 30 hours per week. Unhappy with her work load, Borges' counsellor called Ace and asked the store to cut back on the student's hours. Ace refused. Borges avers that her substantial late-night employment has hurt her grades, her health, and her ability to get into college. Borges turned eighteen one month after this suit was filed.

Finally, Miriam Beckford is currently seventeen. Although employed by McDonald's at the time litigation commenced, Beckford has since quit and is now unemployed. While at McDonald's, Beckford worked ten to fifteen hours per week and was required to stay until 1:00 a.m. Beckford alleges that this late night employment hurt her grades and compromised her health.[3]

In addition to the five student plaintiffs, two teachers from Amundsen, George Schmidt and Janet Fennerty, are plaintiffs in this lawsuit. In their years of teaching, Fennerty and Schmidt have observed, taught, and counselled students battling to maintain their grades while holding down nearly full-time or late-night jobs. Such students are easy to spot, they claim. Because their jobs prevent them from getting enough rest at night, working students often skip class to sleep. High performing students suddenly start turning in poor work. At times, Fennerty has allowed working students to skip class so that they can rest, issuing them passes to the nurse's office. Concerned about the effect of long work hours on his students, Edward Klunk, principal of Amundsen, has called numerous employers to request that they cut back his students' work schedule. Most have complied.

## II. Discussion

As a threshold matter, we must first address the Secretary's contention that plaintiffs lack standing to pursue this action and that, in any event, this matter does not present a justiciable controversy at this time.

### A. Standing

In order to adjudicate a claim in federal court, Article III requires a plaintiff to have standing. A plaintiff satisfies the constitutional requirements of standing if (1) she has suffered an injury in fact, (2) a causal connection exists between the injury and the conduct of which she complains, and (3) it is likely that the injury will be remedied by a favorable decision. *Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The standing doctrine further encompasses prudential policies such as a "general prohibition on a litigant's raising another person's legal rights," and "the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Lujan v. National Wildlife Federation,* 497 U.S. 871, 883, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990). Prudential principles help Article III courts avoid deciding questions of broad social policy in the absence of individual grievances by limiting access to those litigants best situated to press the proffered claim. *See Gladstone Realtors v. Bellwood,* 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979). The government contends that plaintiffs,

---

**2.** These facts and allegations are unsupported by affidavit or other record evidence.

**3.** These allegations are also unsupported by affidavit or other record evidence.

each in different ways, fail to meet constitutional and prudential standing requirements and may not bring this action.

### (i) Teachers

■ First, the Secretary contests the teachers' standing to challenge his interpretation of the FLSA and his failure to undertake rulemaking, contending that these plaintiffs are not within the "class of persons that the statutory provision was designed to protect." *Association of Data Processing Service Organization v. Camp*, 397 U.S. 150, 155, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). Thus, even if the teachers were able to fulfill the constitutional standing requirements, prudential considerations argue against their litigation of this matter. *See FMC Corp. v. Boesky*, 852 F.2d 981, 988 (7th Cir.1988). We agree.

Congress enacted the relevant provisions of the FLSA for the express purpose of eliminating "oppressive child labor." 29 U.S.C. § 212(c). Although it may be that "oppressive child labor" includes employment that impairs a student's ability to perform in school, Congress assuredly was not directing itself to protecting a teacher's capacity to educate, but a child's ability to learn. It is the minor children affected by excessive night labor who are best suited to litigate any misinterpretation of the statute and any failure by the Secretary to appropriately conduct rulemaking on this subject. Accordingly, to the extent that they are proceeding on their own behalf, we dismiss the two teacher plaintiffs from this action. They may, however, continue in their capacities as next friend of the minor plaintiffs.

### (ii) Three Students over the Age of Eighteen at the Time of Filing

■ Three of the student plaintiffs (Hector Escalera, Maria Castillo, and Caprice

Neals) were over the age of eighteen at the time this complaint was filed and are not currently protected in any way under the FLSA. Thus, the government contends, none of them possess a personal stake in the outcome of this litigation, for any change in the FLSA will not affect them. To be sure, even if these plaintiffs receive the relief requested, they are no longer in a position to benefit from regulations limiting the hours a sixteen or seventeen year old may work. *See Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (Because plaintiff, who had suffered injury due to police chokehold, could not establish that he would have another encounter with the police and that all police officers always choke those citizens with whom they come in contact, he had no standing to seek injunction enjoining police department from using chokeholds). Because their alleged injury is not redressable by the relief sought, Escalera, Castillo, and Neals do not have standing to pursue this action.

### (iii) Student Who Turned Eighteen After Suit Was Filed

■ Plaintiff Adelina Borges turned eighteen shortly after this complaint was filed. As with the older plaintiffs, the government contends that Borges lacks standing to bring this suit because her injury is no longer redressable. Although framed as a standing issue, it is better addressed as a question of mootness. In order for a suit to survive, an actual controversy must exist at all stages of federal litigation. Cases in which the dispute has been resolved must be dismissed as moot. *United States Parole Commission v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980). Having turned eighteen, Borges' alleged injury can no longer be redressed by the relief requested.[4] Her claim is thus moot.[5]

---

4. Had this action been brought as a class action on behalf of qualified sixteen and seventeen year olds, Borges would not be in this position, for a continuing controversy would exist with respect to the class members. *See Sosna v. Iowa*, 419 U.S. 393, 399, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975).

5. Nor can Borges claim that, because sixteen and seventeen year olds inescapably grow up, her

claim is the sort "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911) (articulating an exception to the mootness doctrine). Under this exception, a plaintiff who chooses to proceed outside of a class must establish that "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining

### (iii) Seventeen Year Old Plaintiff

██ The remaining plaintiff, Miriam Beckford, is currently seventeen years old and unemployed. Nevertheless, as a student who has held down an after-school job and asserts an interest in gaining future employment during high school, she is an intended beneficiary of the contested provision and has a real and personal stake in the outcome of this litigation. The possibility of obtaining another job is not sufficiently speculative to rob Beckford of standing, and regardless of whether plaintiff's next job in fact subjects her to excessive or late night hours, she would undoubtedly benefit from rules inhibiting an employer from requiring sixteen and seventeen year olds to work hours that would interfere with schooling. Moreover, because Beckford's right to petition the DOL to conduct rulemaking on this issue depends upon the interpretation of § 203($l$), the relief she ultimately seeks will be materially advanced by a favorable ruling here. Accordingly, we reject any suggestion by the government that Beckford's requested relief is too speculative to confer standing. The government contends, however, that plaintiff cannot establish that her injury is "fairly ... trace[able] to the challenged action of the defendant." *Lujan v. Defenders of Wildlife,* —— U.S. at ——, 112 S.Ct. at 2136, *quoting Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1925–26, 48 L.Ed.2d 450 (1976). To be sure, the record is barren of any affidavit or other evidence substantiating Beckford's allegation that her grades have suffered due to late night and excessive work hours.[6] However, the Seventh Circuit has held that well-pleaded allegations are sufficient to withstand an attack on standing even at the summary judgment stage. *Harris v. City of Zion,* 927 F.2d 1401 (7th Cir.1991).[7] Having adequately pleaded its elements, then, we find that Beckford has standing to pursue this action.

### B. Justiciability

Having resolved questions of standing, we next assess whether the action at hand presents a justiciable controversy. Specifically, we must determine whether the DOL's interpretation of § 203(($l$) constitutes final agency action and whether this controversy is ripe for review.

### (i) Finality

In *Lujan v. National Wildlife Federation,* 497 U.S. 871, 881, 110 S.Ct. 3177, 3185, 111 L.Ed.2d 695 (1990), the Supreme Court observed that "[w]hen, as here, review [of agency action or inaction] is sought not pursuant to specific authorization in the substantive

party [will] be subjected to the same action again." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975) (per curiam). Even if Borges could establish that this adjudication would not reach its conclusion within two years, she holds no reasonable expectation that she, herself, will be harmed in the future by the Secretary's allegedly erroneous interpretation of the FLSA. *See Atherton Mills v. Johnston,* 259 U.S. 13, 42 S.Ct. 422, 66 L.Ed. 814 (1922) (constitutional challenge to Child Labor Tax Act which applied to businesses employing children between the ages of fourteen and sixteen was moot where plaintiff was no longer within the ages covered by the Act). *See also, Tucker v. Phyfer,* 819 F.2d 1030 (11th Cir.1987) (plaintiff's claim for declaratory and injunctive relief held moot where plaintiff was no longer a juvenile at the time he moved for class certification).

6. As mentioned above, three plaintiffs submitted affidavits verifying the allegations set forth in the complaint. This Court has received no such affidavit from Beckford.

7. As Judge Easterbrook pointed out in his dissenting opinion in *Harris,* there is considerable room for confusion as to whether a plaintiff, in the face of a summary judgment attack on standing, must submit affidavits demonstrating the validity of her allegations. In *Lujan v. National Wildlife Federation,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), the Supreme Court relied on plaintiffs' affidavits in granting defendant's motion for summary judgment on standing grounds, strongly suggesting that evidentiary support is necessary to survive a challenge to standing. *Id.* However, the Seventh Circuit did not understand *Lujan* to require a plaintiff to supply affidavits in support of standing, stating that "in its discussion of standing, the *Lujan* Court focused on the allegations of the complaint and turned to the affidavits to search for any saving support." *Id.* at 1407. The *Harris* court went on to observe that "[a]t no time did the Court state that well-pleaded allegations of the complaint, if they appropriately identified an 'agency action,' would not be sufficient to confer standing." *Id.* As in *Harris,* plaintiff here has properly alleged the elements required for standing in this case.

statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.' " *Id.* (citing 5 U.S.C. § 704 ("Agency action made reviewable by statute and *final* agency action for which there is no other adequate remedy in a court are subject to judicial review.")). Here, plaintiff does indeed seek review of the Secretary's interpretation of the FLSA pursuant to the general review provisions of the APA, 5 U.S.C. § 704, thus we must determine whether there has been final agency action. *See* Complaint at ¶ 13.

■ As a matter of policy, the final agency action requirement ensures that courts will not intercede in agency processes prematurely. When agency action is merely tentative, rather than definitive, it is sensible and desirable to afford the agency, with its greater expertise, an opportunity to correct, alter, or amend its views before submitting the matter to judicial review.

In light of their silence on the issue, it would seem the parties agree that the Secretary's interpretation of § 203(*l*) is final. Although more may exist, the only direct evidence presented to the Court of the Secretary's alleged interpretation of § 203(*l*) lies in a letter from then-Secretary of Labor Lynn Martin to Congressman Larry J. Hopkins in response to an inquiry made on behalf of one of the Congressman's constituents. Secretary Martin informed Representative Hopkins that

> [u]nder FLSA, there are no hours limitations or time restrictions for individuals who are 16 years of age and older. Any change to FLSA to provide for such restrictions would require legislative action on the part of Congress.

Appendix to Def. Memorandum in Support at 5.

■ There is no question that an agency may articulate a final position in a letter. *See, e.g., Her Majesty the Queen in Right of Ontario v. EPA,* 912 F.2d 1525 (D.C.Cir. 1990). Looking beyond the form in which agency action appears, courts take a "flexible and pragmatic" approach in applying the finality requirement, evaluating the definitiveness of the action and its impact on the day-to-day conduct of the parties involved. *Id.* at 1531 (citing *Ciba–Geigy Corp. v. United States E.P.A.,* 801 F.2d 430, 435 (D.C.Cir. 1986)). In her letter, the Secretary flatly explains the DOL's understanding of its authority under the FLSA to regulate work hours of sixteen and seventeen year olds. Although we might wish for a more expansive elocution of the Secretary's position, the tenor of the letter, along with the Secretary's open acknowledgement of this interpretation, strongly suggests that the DOL has, in fact, reached a definitive conclusion regarding the interpretation of the FLSA's application to sixteen and seventeen year olds. As such, it does not appear that judicial review would prematurely interrupt the evolution of agency policy.

#### (ii) Ripeness

■ Even if the DOL has taken final agency action, the government asserts that this matter is not ripe for review because plaintiff has not exhausted her administrative remedies. To determine ripeness, courts consider "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). At the outset of this inquiry, we distinguish between the various actions (and inactions) that the plaintiffs challenge in their complaint. First, plaintiff contests the DOL's interpretation of § 203(*l*). Additionally, plaintiff seeks to enjoin the Secretary to investigate the need to regulate older students' hours and to promulgate rulemaking to that effect.

#### (a) Interpretation of the FLSA

■ The Secretary's statutory interpretation of § 203(*l*) appears to be ripe for judicial evaluation. An agency action is fit for review if (1) the issue presented is purely legal, (2) consideration of the issue would not benefit from a more concrete setting, and (3) the agency's action is final. *Her Majesty the Queen,* 912 F.2d at 1532. Because the present dispute revolves around an issue of statutory interpretation, the first two elements are easily met. As for the third, we have

already concluded that the Secretary's construction of § 203(*l*) constitutes final agency action. With fitness established, we need inquire no further into the ripeness of this matter. *Id.* at 1533 *quoting National Recycling Coalition, Inc. and Environmental Defense Fund, Inc. v. Reilly,* 884 F.2d 1431, 1434 (D.C.Cir.1989) (" 'Where the first prong of the [*Abbott Laboratories* ] ripeness test is met and Congress has emphatically declared a preference for immediate review ... no purpose is served by proceeding to the second prong [hardship to the parties].' ").

### (b) Injunction to Force the Secretary to Conduct Rulemaking

Given our ruling below, we need not reach the question of whether plaintiff's request for an injunction is ripe for review. Nevertheless, we note that such ripeness would likely be found lacking. Defendant challenges the ripeness of the plaintiff's appeal for an injunction, contending that "[i]f this Court were to find that the Secretary has the authority to issue the regulations plaintiffs seek, plaintiffs have available to them an administrative process pursuant to the APA in which to suggest the changes they request for the Department of Labor and offer evidence which supports their views." Def. Memorandum in Support at 32. To be sure, under the APA "[e]ach agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e).

■ To date, plaintiff has not petitioned the Secretary to conduct rulemaking, although presumably to do so would have been futile. However, even plaintiff concedes, that "[i]f this Court clarifies the Secretary's authority to act, there is no reason to believe that the Secretary will fail to act." Pl. Reply at 9. Clearly, then, any court involvement in the agency's decision to conduct rulemaking would be premature where, as here, the agency has not yet had the opportunity to pass upon the merits of initiating rulemaking. *See Renegotiation Board v. Bannercraft Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974) (until plaintiffs petition an agency for rulemaking, the courts may not intervene in agency workings).

### C. The Proper Interpretation of the FLSA

The parties dispute the proper interpretation of the term "oppressive child labor" as it pertains to sixteen and seventeen year old students. The language at the heart of the controversy is this:

"Oppressive child labor" means a condition of employment under which ... (2) any employee between the ages of sixteen and eighteen years is employed by an employer in any occupation which the Secretary of Labor shall find and by order declare to be particularly hazardous for the employment of children between such ages or detrimental to their health or well-being.

29 U.S.C. § 203(*l*). Section 203(*l*) goes on to state that

[t]he Secretary of Labor shall provide by regulation or by order that the employment of employees between the ages of fourteen and sixteen years in occupations other than manufacturing and mining shall not be deemed to constitute oppressive child labor if and to the extent that the Secretary of Labor determines that such employment is confined to periods which will not interfere with their schooling and to conditions which will not interfere with their health and well-being.

*Id.* Plaintiff argues that this language clearly permits the Secretary to regulate the hours worked by sixteen and seventeen year old students, because late night or excessive hours can unquestionably be detrimental to their health and well-being. On the other hand, the Secretary maintains that while Congress expressly authorized the DOL to regulate the hours of fourteen to sixteen year olds (to prevent interference with their schooling), it was silent as to sixteen to eighteen year olds. Instead, Congress merely directed the Secretary to determine and prohibit older children from working in "occupations" which are hazardous or detrimental to their health and well-being.

### (i) Standard of Review

■ In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S.

837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), the Supreme Court clarified the court's role in reviewing an agency's interpretation of the statute it is charged with administering. The Court explained that if the statute is clear, then "the court ... must give effect to the unambiguously expressed intent of Congress." *Id.* at 841, 104 S.Ct. at 2781. However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782.

### (ii) Reasonableness of the Secretary's Interpretation

■ Regardless of whether the language contained in § 203(*l*) is clear, it is beyond dispute that the Secretary's interpretation is permissible. The plain wording of § 203(*l*) suggests that, unlike the hours of fourteen and fifteen year olds, Congress did not intend the DOL to regulate the hours worked by older students. Unlike the statute's express stricture against fourteen and fifteen year olds working hours that would conflict with schooling, § 203(*l*) is silent as to the work hours of older children. As the Secretary notes, Congress simply prohibited the employment of older children in *occupations* that are hazardous or detrimental to their health and well-being.

Plaintiff argues that an occupation is, or at least can be, detrimental to a child's health and well-being if it calls for excessive or late night hours, and, thus, the statute permits, if not requires, the Secretary to promulgate regulations to that effect. The term occupation, however, plainly refers to a type of job and the dangers inherent in that job, not to the special conditions or hours an employer might impose. Indeed, Congress reveals its intended meaning of the term in the first sentence of § 203(*l*). The provision provides that

> "Oppressive child labor" means a condition of employment under which any employee under the age of sixteen years is employed by an employer other than a parent or a person standing in place of a parent employing his own child or a child in his custody under the age of sixteen years *in an occupation other than manufacturing or mining ....*

29 U.S.C. § 203(*l*). By indicating that manufacturing and mining are examples of occupations, Congress demonstrated its understanding that an occupation simply constitutes a type of job and its inherent hazards. Had Congress intended to use the term to include the hours and conditions of particular jobs, such that calling for long hours could be detrimental to a child's health and well-being, the last sentence of the provision would be redundant. That is, if plaintiff's interpretation is correct, Congress would not have needed to declare that fourteen and fifteen year old children may only work in occupations other than manufacturing or mining "to the extent that the Secretary of Labor determines that such employment is confined to periods which will not interfere with their schooling and to conditions which will not interfere with their health and well-being." *Id.* By extension, had Congress intended the DOL to regulate the hours worked by older children, it could easily have inserted similar language for sixteen to eighteen year olds. Its omission of such language strongly suggests that it did not envision restrictions on the hours older children might work.

■ In addition to the language, we also look to Congressional action (and inaction) to discern Congressional intent. Although the FLSA was passed over fifty years ago, § 203(*l*) has never been used as a basis for regulating work hours for sixteen and seventeen year olds. Instead, the DOL has consistently prohibited occupations on the basis of safety factors. *See, e.g.,* 29 C.F.R. 570.67 (finding roofing hazardous); 29 C.F.R. 570.64 (finding brick making hazardous); 29 C.F.R. 570.66 (finding work in wrecking and excavation industries hazardous). Although Congress has altered and amended the FLSA since its inception in 1938, it has not changed § 203(*l*).[8] Under time-tested canons of statutory construction, "[i]t is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent changes, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one in-

---

8. Congress amended the FLSA in 1961 and again in 1974.

tended by Congress."[9] *Geldermann, Inc. v. Commodity Futures Trading Commission,* 836 F.2d 310, 316 (7th Cir.1987), *quoting NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 274–75, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974).

Finally, the legislative history of the FLSA comports with the Secretary's interpretation. As the Secretary points out, Industrial Codes promulgated under the National Industrial Recovery Act preceded the FLSA and provide the landscape against which Congress crafted, considered and passed § 203(*l*). The Codes set eighteen as the minimum age for employment in mining and most manufacturing occupations, sixteen as the minimum age for non-hazardous occupations,[10] and established exemptions from these minimum age requirements to permit fourteen and fifteen year olds to work in certain occupations. The exemptions for younger children typically limited the hours such youngsters could work, tailoring their schedules to school requirements.[11]

Most, if not all, of these features found their way into the child labor provisions of the FLSA, passed three short years after the Supreme Court declared the NRA unconstitutional. This degree of overlap indicates that Congress had the Industrial Codes, with its tiered system of regulating child labor, firmly in mind when passing the FLSA. The legislative history thus fully supports the Secretary's reading of § 203(*l*).

Although we share the plaintiff's concern about the plight of full-time students compelled to labor late into the night and to work hours almost certain to impair their studies, and while we recognize that education plays a key role in achieving success in today's society, the bounds of our authority are clear. Any change must, as Secretary Martin observed, come from the legislature.

## III.  Conclusion

For the foregoing reasons, we grant defendant's motion for summary judgment and deny plaintiffs' motion.  It is so ordered.

---

**9.** Evidence that Congress understands the Secretary's interpretation can be found in a bill submitted to Congress by Congressman Lantos. The bill seeks to impose certain restrictions on the number of hours worked by sixteen and seventeen year olds and makes sense primarily if § 203(*l*), as it stands, does *not* permit limitation of the hours worked by older children. Nevertheless, due to the limited information provided to the Court, we cannot be certain that Congress was aware of the disputed interpretation at the time these changes were made. However, the fact that the DOL, since 1938, had refrained from regulating the hours of older children suggests that Congress was on notice of the Secretary's understanding of § 203(*l*) at the times they revisited the statute.

**10.** As in § 203(*l*), the Industrial Codes sought to prohibit sixteen to eighteen year olds from working in occupations that were hazardous or detrimental to their health and well-being. Also as under § 203(*l*), the Children's Bureau restricted the employment of children in physically dangerous occupations or occupations deleterious to a child's health. *See Child Labor Under the NRA* at 59–60. Notably, there is no evidence that the Bureau considered the hours worked by sixteen to eighteen year olds in regulating occupations.

**11.** For example, boys under the age of sixteen could sell or deliver newspapers "not more than three hours a day on school days and not more than four hours a day on other days, where such work may be done without impairment of health and without interference with the hours of day school." Office of National Recovery Administration, Division of Review, Work Materials No. 45, *Child Labor Control Under NRA,* (March, 1936) at 12.